THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

JOHN W. SISSON.

*Filed at Springfield March 21, 1881.*

98   335
182   123
98   335
f87a 114

1. SCHOOL LAW—*notice of election as to purchase of school house site, etc.* Under the school law, the notice required to be given of an election for building a school house or purchasing a school house site, is very general, the law not requiring that any particular site should be named in the notice, or that it should state the amount to be borrowed for the purpose, or that but a single question be submitted at any one election.

2. A notice of an election in a school district "for the purpose of voting for a school house site for a school house for district," etc., describing the district, and "also for the purpose of voting for or against issuing bonds to erect or purchase a school house for said district," was *held* not liable to the objection of indefiniteness and uncertainty as to the site to be voted for, or the amount of bonds to be issued, or bad as embracing two questions instead of one only.

3. SAME—*powers of directors as to purchasing school house and site, and to issue bonds.*. The power given by the statute to borrow money for the purpose of building school houses, or purchasing school sites, embraces the power to purchase a school site having already a school house thereon, and a failure to name in the notice of election, or vote, the amount of the bonds to be issued, will leave the directors free to issue any amount that may be necessary for the purpose of the vote, within the limit fixed by the statute, which is five per cent of the taxable property of the district.

4. The power to borrow money for the purpose of building a school house or purchasing a school site, will not preclude the giving of the bonds voted, in exchange for a site having a school house already erected thereon. The end accomplished thereby is the same as if the bonds were sold, and the money realized therefrom used in the purchase.

5. FAILURE OF CONSIDERATION—*purchase money—failure of title.* The purchaser of land, receiving a deed with covenants of title, can not avoid the payment of his obligations for the purchase money, on the ground the grantor had no title, if the purchaser's possession has not been disturbed, or the paramount title asserted. The same rule applies to the purchase of a school house and site by school directors, so that a tax-payer can not resist the payment of taxes levied to pay the purchase money, on the ground of a failure of title, so long as the possession of the property is undisturbed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the County Court of Jersey county; the Hon. ROBERT A. KING, Judge, presiding.

Messrs. SNEDECKER & HAMILTON, and Mr. A. A. GOODRICH, State's Attorney, for the People:

This election was held under and by virtue of sec. 47, Rev. Stat. 1874, p. 962, and is clearly in conformity with the law, and valid and binding upon said district No. 8, and the school directors of said district executed the bonds of said district for the sum of $10,000, and purchased the said lots 4

and 5 voted for at said election, as they were lawfully author-
ized to do by said election, under the statute aforesaid.

We contend that lawful authority was . conferred upon
the school directors of district No. 8, by this election, to
issue the bonds of said district, to purchase said lots 4 and 5,
in block 2, and the amount of bonds to be issued by them
not being specified on the ballots cast, the directors are only
limited in the amount of their issue by said section 47, page
962, Rev. Stat. 1874, to five per cent of the taxable property
of the district, and there is no objection made that the bonds
issued were in excess of the amount permissible by law.

Mere irregularities will not invalidate an election, and if
the notice specifies the purpose of the election in such a way
as to leave no doubt of its meaning, it is valid. *Merritt et al.
v. Farris et al.* 22 Ill. 303.

The bonds having been issued, it must clearly appear that
they were issued without authority before the tax levied to
pay interest can be defeated. *Chiniquy* v. *The People ex rel.*
78 Ill. 570.

Messrs. WARREN & POGUE, for the defendant in error:

The property for which the bonds were issued was held in
trust for a primary school house and place of worship, and
erected with funds donated expressly for such purpose, and
consequently could not be sold to the school district in viola-
tion of the trust under which the same was first acquired. A
donation for a private school can not be appropriated to help
support the public schools. *McIntire* v. *Zanesville*, 17 Ohio
St. 352; *Phillip Academy* v. *King*, 12 Mass. 562; *Plymouth* v.
*Jackson*, 15 Pa. St. 44; Green's Brice's Ultra Vires, secs.
48–51, and 57–79; 2 Perry on Trusts, 352, 349, 350, note 2,
sec. 733; 2 Story's Eq. Jur. secs. 1162, 1192, 1257 and 1258.

The ballots of the voters voting for lots 4 and 5 and for the
issuing of bonds, did not say whether the directors were
to erect a building thereon or purchase one. Neither the
notice nor the ballots say one word about issuing bonds to

pay for the school site.    The propositions voted on were
distinct and should have been submitted separately.

Notice of an election upon the question whether a town
will vote a tax for *paying* a bounty does not authorize a vote
to borrow money for this purpose.    *Atwood* v. *Town of Lin-
coln,* 44 Vt. 332; *Blush* v. *Colchester,* 39 id. 193.

A school tax voted at a meeting not legally called is void.
*Hains* v. *School District,* 41 Me. 246; *Rideouts* v. *School Dis-
trict,* 1 Allen, 232; *People* v. *Castro,* 39 Cal. 65; Cooley on
Taxation, 247–9.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an application by the collector of Jersey county,
to the county court, for judgment against real estate for de-
linquent tax of 1877, at which time John W. Sisson filed his
objections to the rendition of judgment against his real estate
situate in school district No. 8, township No. 7, range No.
12, in said county, for three-fifths of the school tax levied for
the year 1877.   The court sustained the objections, rendered
judgment accordingly, and the plaintiff appealed to the
Appellate Court for the Third District, where the judgment
of the county court was affirmed.   The cause was thereupon
brought to this court upon writ of error.

The objections were, that the three-fifths of the school tax
complained of was to pay $1000 interest, and $500 principal,
of $10,000 of the bonds of said school district, which had
been issued to Hamilton Primary school, a corporation, in
payment of the purchase money of lots 4 and 5, in block 2,
in the town of Otterville; and that the bonds were invalid
because of the insufficiency of the form of the notice for the
election, which was called for a vote upon the question of the
issue of the bonds; and also that the said lots were trust
property and could not be conveyed, wherefore the bonds
were issued without consideration and were void.   The form
of the notice in the particular which is objected to as being

insufficient, was, "for the purpose of voting for a school house site, for a school house for district No. 8, in township No. 7, north range No. 12, west of the third principal meridian, in said Jersey county, State of Illinois. Also for the purpose of voting for or against issuing bonds to erect or purchase a school house for said district." It appears that at the election held in pursuance of the notice, on December 2, 1876, ninety-four ballots were cast, fifty two of them containing the words, "For school house site in district No. 8, township 7, north range 12, Jersey county, Illinois, lots 4 and 5, block 2, Otterville, Illinois," and "for issuing bonds," and that forty-two ballots were cast with the words on them, "Against school house site," and "against issuing bonds." At the time, there was a school house on the lots. The district had never before had a school house site, or school house.

The fault found with the notice is, that it fails to specify the questions to be voted upon with sufficient particularity; that it should name the particular school house site which was to be voted for; that what was to be voted for should be stated definitely, and not in the alternative; that the amount of the bonds to be issued should have been stated; that the notice does not embrace a vote to pay for a school house site; that the questions here should have been separately submitted at different elections; and that there is no power given to school directors to purchase a school house already erected; and that the authority is only to borrow money, and not to exchange bonds for school property.

The statute provision is (§ 47 School Law, Rev. Stat. 1874, p. 962,) that for the purpose of building school houses or purchasing school sites, the school directors, by a vote of the people, at an election called and conducted as required by section 42 of the act, may borrow money, issuing bonds, etc., and all that section 42 requires in this respect, in the notice, is that it shall specify "the question or questions to be voted on."

This is very general,—it does not require that any particular site should be named in the notice, or that it should state the amount to be borrowed, or that but a single question should be submitted at any one election. The circumstances here are to be looked at. The school district did not own any school house or school house site. There was within the bounds of the district a school house already built on lots 4 and 5, in block 2, in Otterville, belonging to another private corporation. The district was undertaking to provide for itself a school house of its own. As to be understood in the light of the circumstances, the notice, substantially, was for a vote upon the question of the purchase of this school house already built, or the purchase of a different school site and the erection of a school house thereon, and the majority vote, "For school house site, lots 4 and 5, block 2, Otterville," and "For issuing bonds," was a vote for the purchase of that school site with the school house thereon, and authorized the school directors to purchase the same. The statute requiring nothing more than that the notice should specify the question or questions to be voted on, we deem it as in substantial compliance with the statute, and sufficient.

The power given by the statute to borrow money for the purpose of building school houses or purchasing school sites, embraces, no doubt, the power to purchase a school site having already a school house thereon. The not naming in the notice or vote the amount of the bonds to be issued, left the school directors free to issue to any amount which might be required for the purpose of the vote, within the limit fixed by the statute, which is five per cent of the taxable property of the district.

We can not think that the power to borrow money for the purpose of building school houses or purchasing school sites did not admit the giving of these bonds in exchange for the school property. The end accomplished is the same, whether the bonds be first sold and their proceeds be paid for the property, or the bonds themselves be given directly for it.

The suggestion made that property may be bought at better advantage with cash than with bonds, we can not judicially recognize as of sufficient force as not to allow the giving of the bonds directly, in payment for the purchase of the lots.

As respects the question of title, it appears that in the year 1834, one Silas Hamilton, died, leaving a will whereby he bequeathed four thousand dollars for the establishment of a primary school, $2000 of it for the erection of a building suitable for a school and a place of worship, and $2000 to constitute a fund for the support of a teacher, designating the place at or near which the house should be located. That the executors of the will, in 1835, purchased at the place designated, of Daniel Hamilton, by deed of that date, a parcel of land, of which the aforementioned lots 4 and 5, in block 2, in Otterville, are a part, the deed naming: "To have and to hold to them and their assigns for the purpose of erecting a school house and house of public worship thereon," and in compliance with the will, the executors erected on the premises a house suitable for a school and for a place of public worship, and the same was used for such purposes until 1840, when the General Assembly of this State passed an act, (Laws 1839-40, p. 53) which, after reciting in the preamble the provision of said will, and what had been done thereunder, created a body politic by the name and style of the Hamilton Primary School, with power to acquire and hold property and convey the same, "together with all donations and bequests made by Silas Hamilton for school purposes." The school was to be governed by five trustees, and it was made "the duty of the trustees of said school to see that the donation of the said Silas Hamilton is faithfully applied to the objects of the donor." Ever since, nntil December 15, 1876, the trustees had the possession of and used the premises for the purposes aforesaid.

In 1873 the trustees tore down and destroyed the school house on the premises and built another one,—John G. Dougherty, one of the trustees, and the treasurer, loaning

them $6800 for the purpose, and taking their note. On December 15, 1876, the trustees of said Hamilton Primary School, made a warranty deed to the trustees of schools of said township 7, north range 12, in said Jersey county, for the use of this school district No. 8, aforesaid, of said lots 4 and 5, in the town of Otterville, and the school directors of said school district delivered to the said trustees of the Hamilton Primary School, in payment of the purchase money for said lots 4 and 5, $10,000 of bonds of said school district No. 8, in which is embraced the $500 principal, and the $1,000 as interest, to pay which the tax objected to in this proceeding was levied. Of the bonds, $6,800 were paid to said John G. Dougherty, and which he now holds, in exchange for the note of that amount which said trustees had given him, for said money loaned by him to them.

We do not see that the question whether or not this school district, or the trustees of schools of this township 7, for its use, got any title by this deed from the trustees of the Hamilton Primary School, is before us to be passed upon in this proceeding. For, admitting the defect of title, it would not avail as a defence in this proceeding. Upon the facts of this case, under the decisions of this court, even the school district itself, in a suit against it upon these bonds, could not set up in defence this alleged want of title. It appears in the case that ever since the 15th of December, 1876, the time of the making of said warranty deed, the school directors of this school district No. 8 have been in the exclusive and peaceable possession of said lots 4 and 5, in block 8, in Otterville. In *Vining* v. *Leeman*, 45 Ill. 246, this court held that a purchaser of land receiving a deed with covenants of title, can not avoid the payment of promissory notes given for the purchase money, on the ground that the grantor had no title, if the purchaser's possession has not been disturbed nor the paramount title asserted; and to the same effect *Laforge* v. *Mathews*, 68 Ill. 328. If the maker of the bonds could not successfully defend against a suit brought to enforce their

payment, on the ground of want of title, surely a tax-payer can not for such reason resist a proceeding for the collection of taxes levied to make such payment.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*